**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**WESTERN DIVISION**

|  |  |
|---|---|
| ALTIUM, LLC,<br><br>     Plaintiff,<br><br><br>     V.<br><br><br>ZDM TECHNOLOGIES, INC., SCOTT<br>WILLIG and DOES 1 THROUGH 10.<br><br>     Defendants. | CIVIL ACTION NO. 19-CV-50285 |

## <u>COMPLAINT AND DEMAND FOR TRIAL BY JURY</u>

Plaintiff, Altium, LLC ("Plaintiff"), brings this action against Defendants, ZDM

Technologies, Inc. ("ZDM"), Scott Willig ("Mr. Willig") and Does 1 through 10 (collectively

"Defendants"), for copyright infringement in violation of 17 U.S.C. § 101 et seq.  By this

Complaint, Plaintiff seeks, inter alia, injunctive relief, monetary damages, and attorney's fees

under 17 U.S.C. §§ 106, 501, 502, 504 and 505, and alleges as follows:

## <u>THE PARTIES</u>

1.     Plaintiff is a corporation with a principal place of business located at 4225

Executive Square, Level 7, La Jolla, CA 92037.  Plaintiff is the owner of three registrations for

the ALTIUM® Designer modular suite of software, including: U.S. Copyright Registration No.

TX 8-415-448 ("ALTIUM® 448"); U.S. Copyright Registration No. TX 8-415-449

("ALTIUM® 449"); and U.S. Copyright Registration No. TX 8-415-454 ("ALTIUM® 454");

hereinafter ("ALTIUM® Designer" or the "ALTIUM® Software").

2.      Upon information and belief, ZDM is an Illinois corporation with a principal place of business located at 1385 Horizon Drive, Johnsburg, IL 60051.  According to the records at the Illinois Secretary of State, its registered agent is Jeff Lawson, 1385 Horizon Drive, Johnsburg, IL 60051.

3.      Upon information and belief, Mr. Willig is an Illinois resident with a home address of 324 Tuxedo Lane, Cary, IL 60013 and a business address of 1385 Horizon Drive, Johnsburg, IL 60051.  Corporate filings identify Mr. Willig as the President of ZDM, thus he is a principal, guiding spirit, central figure, and the moving, active, conscious force behind ZDM's copyright infringement, and has control over the day to day operations thereof, and directly benefits from the tortious conduct alleged herein.

4.      Plaintiff is unaware of the true names and capacities of DOES 1 through 10, inclusive, and therefore sues said defendants by such fictitious names.  Plaintiff will ask leave of Court to amend this Complaint to state the true names and capacities of the defendants sued as DOES when the same are ascertained.  Plaintiff is informed and believes, and based thereon alleges that each of the fictitiously named defendants are responsible in some manner for the occurrences herein alleged, and that Plaintiff's damages, as herein alleged, were proximately caused by their conduct.

5.      Plaintiff is informed and believes, and on that basis alleges, that at all times relevant to this action, each of the Defendants was the agent, affiliate, officer, director, manager, principal, alter-ego, and/or employee of the remaining Defendants and was at all times acting within the scope of such agency, affiliation, alter-ego, relationship and/or employment, and actively participated in or subsequently ratified and adopted, or both, each and all of the acts or

2

conduct alleged herein with full knowledge of each and every violation of Plaintiff's rights and the damages to Plaintiff proximately caused thereby.

## JURISDICTION AND VENUE

6.      This is a civil action seeking damages and injunctive relief for copyright infringement under the Copyright Act of the United States, 17 U.S.C. § 101 et seq.

7.      This Court has original and exclusive jurisdiction over the subject matter of this Complaint pursuant to 28 U.S.C. §§ 1331 and 1338(a).

8.      Plaintiff is informed and believes that this Court may properly exercise in personal jurisdiction over Defendant ZDM because ZDM is an Illinois Corporation located in McHenry County and regularly does business in the State of Illinois and over Defendant Willig as he is a resident of the State of Illinois and this District.  .

9.      Venue is proper in this District under 28 U.S.C. §§ 1391(b) and (c), and/or § 1400(a).

## THE ASSERTED COPYRIGHTS

10.      U.S. Copyright Registration No. TX 8-415-448, registered on July 6, 2017 ("ALTIUM® 448") is owned by the Plaintiff.

11.      U.S. Copyright Registration No. TX 8-415-449, registered on July 6, 2017 ("ALTIUM® 449") is owned by the Plaintiff.

12.      U.S. Copyright Registration No. TX 8-415-454, registered on July 6, 2017 ("ALTIUM® 454") is owned by the Plaintiff.

## BACKGROUND FACTS

13.      Plaintiff is a corporation registered to do business in California, and is one of the oldest businesses developing electronic design tools for electronics in the industry.

3

14. Plaintiff's flagship product, ALTIUM® Designer, has grown to become one of the most recognizable brands in electronic design worldwide, and is the most widely used electronics design system in the market today. ALTIUM® Designer provides a complete environment for electronic schematic and layout used in a wide variety of industries including Aerospace, Medical, and Transportation.

15. Plaintiff licenses the ALTIUM® Software to its customers. Customers may purchase single user licenses or multi-user licenses. In either case, the number of simultaneous users or end-users may not exceed the number of licenses purchased. Plaintiff prevents unauthorized access of the ALTIUM® Software through the use of a Security Mechanism. Plaintiff's license agreement states that customers are not allowed to use the ALTIUM® Software without the Security Mechanism, and that the ALTIUM® Software can detect the installation or use of illegal copies of the ALTIUM® Software and collect and transmit data about those illegal copies.

16. Piracy of software occurs when users access software for which they have not purchased a valid license. The ease of digital replication of software lends itself to illegal copying of software, where users may make multiple copies of a software program, and then distribute the copies to users who have not made a legal purchase of the software (i.e., either distributing the software for free, or selling the copies of the software at deeply discounted prices). The licensing associated with the ALTIUM® Software limits how many licensed versions of the ALTIUM® Software can be used at once, but Plaintiff allows those licensed organizations to install the ALTIUM® Software on an unlimited number of computers.

17. In an effort to reduce the use of illegally copied software, software providers implement license verification technology where the software will not function unless a license

4

has been legally purchased. The license verification technology may be a software mechanism or a physical mechanism to be attached to a single computer. The license verification technology may be in the form of a key (i.e., a series of numbers and letters) that a user types in during the software installation process, or a hardware device, where the software will only operate correctly when the hardware device is attached to the computer executing the software. The license verification technology is provided by the software provider to the buyer when the software is purchased legally. Users who have not made a legitimate purchase of the software will not have access to the key or hardware device provided by the software provider, and therefore the software will not function properly. Plaintiff provides license verification technology as a component of the above-mentioned Security Mechanism.

18. Software hackers reverse engineer the security mechanism and then provide processes and utilities to bypass the license enforcement in order to allow unauthorized use of the software. These processes and utilities mimic the license verification technology (i.e., keys, hardware devices, etc.) as a means to allow pirated software to function fully as legally purchased software. Software utilities that mimic the license verification technology are often referred to as "cracked" licenses. Software hackers may also create hacked versions of the software such that a license is not needed during installation.

19. Sophisticated websites exist where illegally obtained software, the software utilities that mimic the license verification technology, and hacked versions of the software may be downloaded and installed by those who do not want to pay for properly licensed software. Each hacked version of the software represents a lost sale and/or license for the company that owns the software, and for resellers of the software (who may provide hardware installation and support, and software configuration, customization, and maintenance). A study by the Business

Software Alliance reported that properly licensed software has a positive impact on national economic activity that is more than three times the impact of pirated software.[1]

20.     Software that has been hacked or modified to use a cracked license may also contain malware that can damage computer systems, and/or infiltrate the computer network and the data on that network.  In a report commissioned by the Business Software Alliance, the higher the pirated software rate in a country, the more malware generally encountered on computers in that country.[2]  Software that has been hacked may also not operate properly, negatively impacting the reputation of the software company that now has no oversight or control over the quality of the hacked versions of its software in use, and/or the products produced by that software.

21.     Piracy Detection and Reporting Security Software (PDRSS) exists to identify instances of pirated software in use and provides the identity and location of organizations utilizing the pirated software to the software providers.  Identification of pirated software allows the software providers to take legal action against intentional software piracy, notify unwitting organizations of the illegal use of the software (and the potential malware problems that can accompany pirated software), and sell valid software licenses in the place of the previously illegally obtained software programs to recoup lost sales.  Plaintiff identifies instances of pirated software in use through PDRSS which, along with the license verification technology, is a component of the Security Mechanism.

---

[1] http://www.bsa.org/~/media/Files/Research%20Papers/BSAINSEADSoftwareValueStudy.pdf

[2] http://www.bsa.org/news-and-events/news/2015/february/02182015malwarestudy?sc_lang=en-US

22.     PDRSS providers also identify the means by which software hackers have thwarted the license verification technology (i.e., the aforementioned cracked license) for a particular software program.  For example, PDRSS providers may accomplish this by downloading pirated software from the above-mentioned websites and determining how the software hackers were able to bypass the license verification technology.  Once the software hackers' methods are identified, the PDRSS providers then work with software providers, such as Plaintiff to map out a plan for determining when pirated software is in use.  This includes identifying when the pirated software is using a cracked license.

23.     The plan may include a variety of forms for identifying software piracy.  The plan may also include defining software use patterns that are indicative of software piracy.  PDRSS providers work with software providers to determine various patterns that are indicative of pirated software use, and thresholds at which the PDRSS software should begin to gather and report data on the computer using the pirated software.  For example, it is common for a potential customer to test out a software program for a short period of time before deciding to purchase the software package legally.  However, an organization that continues to use illegally downloaded software for an extended period (i.e., beyond a reasonable test period as defined by the software provider) has breached the threshold of a trial period.  Another threshold might be the detection of a cracked license which is an indication of an anomaly within the software, or other suspicious patterns of use of the software.

24.     Software providers, such as Plaintiff embed the PDRSS (according to the plan tailored specifically for that software provider) within their software, validate that the patterns and thresholds will trigger on pirated software (and will not trigger on validly purchased software), and then release the software.  The software that contains the embedded PDRSS also

provides a clear notice within the End User License Agreement (EULA) of the existence of the PDRSS within the software. Once new versions of software are released, both legally purchased software and the eventually pirated software will contain the embedded PDRSS that triggers data reporting when suspicious patterns and thresholds are detected.

25.     The serial number of the license is a unique identifier and helps in identifying unauthorized versions of the software. Multiple versions of software using the same serial number are indicative of unauthorized versions of software using a cracked license. In some cases, illegal license generators create license files having serial numbers that are inconsistent with the serial numbers generated by the software providers, which is also indicative of a cracked license.

26.     The IP address is a unique address used to identify computers on the global network of the internet. An IP address is the numerical sequence by which a computer on the public internet can identify another computer on the public internet. IP addresses are in the form xxx.xxx.xxx.xxx where each xxx must be a number between 0 – 255.

27.     The identifying name of a computer is typically a name an organization gives to each computer in the organization for easy identification within the organization. For example, identifying computer names Computer_Lab_1 and Computer_Lab_2 are easy to remember, and help employees within the organization easily reference particular computers, rather than, for example, referring to computers by a serial number associated with the computer hardware.

28.     A Media Access Control ("MAC") address is a unique hardware identifier assigned to network interfaces. Every device that makes a physical connection to the network, whether it is an Ethernet card or port or wireless connection has a unique and specific address. Thus, a computer with both an Ethernet connection and a wireless connection has two unique

MAC addresses. A MAC address is a series of numbers and letters. When a network device is manufactured, it is assigned a MAC address at the factory. The first six digits of a MAC address represent the device manufacturer, which can be looked up on the Internet.

29. Reporting data from the embedded PDRSS includes a variety of information to identify the software that has been pirated and the organizations utilizing the pirated software, such as the version of the software being used, the license serial number, the Internet Protocol (IP) address of the organization where the pirated software is running, the identifying name of the computer, and a MAC address. Through the Security Mechanism, Plaintiff collects the aforementioned identifying information to determine when pirated and unlicensed versions of its ALTIUM® Software are being utilized.

30. Software providers may track their own reporting data or may use third party providers to track the reporting data. Once pirated copies of software are identified, software providers can notify the organizations using the software, and request that they purchase valid licensed copies of the software instead of using the pirated software.

31. Through the use of PDRSS, Plaintiff has identified Defendants as using unlicensed and pirated ALTIUM® Software.

32. ZDM promotes itself as a company that offers a unique blend of experience and facilities to provide cost effective quality PCB and design Manufacturing.

33. Plaintiff has detected at least thirty-nine (39) instances of unauthorized access of ALTIUM® Designer by Defendants through the use of PDRSS. The PDRSS reported three (3) computers located at ZDM running an unauthorized version of ALTIUM® Designer between March 10, 2019 through July 10, 2019.

34. On June 14, 2019, McInnes & McLane, LLP ("M&M") sent a letter to ZDM on behalf of Plaintiff via email and priority mail in an attempt to resolve the matter. The letter provided detail concerning the unlicensed, pirated use of ALTIUM® Designer and an offer to settle and close the matter. Although all indications are that ZDM received the communication, ZDM never responded to address the concerns set forth in the letter.

35. On July 22, 2019, M&M sent another letter via email and priority mail to ZDM. M&M reiterated the need to discuss ZDM's infringement of ALTIUM® Designer and that litigation was forthcoming if ZDM failed to address Altium's concerns. The letter also enclosed a copy of the Complaint that would be filed if no resolution could be reached. ZDM did not respond.

36. Upon information and belief, Mr. Willig as the President of ZDM, was aware of and responsible for the use of the unlicensed, pirated versions of ALTIUM® Designer.

37. Upon information and belief, Mr. Willig as the President of ZDM, makes all management decisions concerning the purchase and use of all hardware and software.

38. Upon information and belief, Defendants continue to infringe upon Plaintiff's Copyrights by using unlicensed, pirated versions of the ALTIUM® Software.

39. As a direct and proximate result of Defendants' acts of infringement, the Plaintiff has suffered damages and will continue to suffer damages.

40. As a direct and proximate result of Defendants' acts of infringement, the Plaintiff has suffered and continues to suffer irreparable harm for which there is no adequate remedy at law.

10

## COUNT ONE

### Infringement of ALTIUM® Software Registration Number TX 8-415-448 ("ALTIUM® 448") by ZDM, 17 U.S.C. §§ 106 and 501

41.     The Plaintiff incorporates the previous paragraphs of this Complaint by reference and re-alleges them as originally and fully set forth herein.

42.     ZDM has knowingly and intentionally infringed, and continues to infringe ALTIUM® 448, and will continue to do so unless enjoined by this Court.

43.     As a direct and proximate consequence of ZDM's infringing acts, the Plaintiff has suffered and will continue to suffer injury and damages, and unless such acts and practices are enjoined by the Court, will continue to be injured in its business and property rights, and will suffer and continue to suffer injury and damages, which are causing irreparable harm and for which Plaintiff is entitled to relief.

44.     Upon information and belief, the aforementioned infringement is knowing, intentional and willful.

## COUNT TWO

### Infringement of ALTIUM® Software Registration Number TX 8-415-449 ("ALTIUM® 449") by ZDM, 17 U.S.C. §§ 106 and 501

45.     The Plaintiff incorporates the previous paragraphs of this Complaint by reference and re-alleges them as originally and fully set forth herein.

46.     ZDM has knowingly and intentionally infringed, and continues to infringe ALTIUM® 449 and will continue to do so unless enjoined by this Court.

47.     As a direct and proximate consequence of ZDM's infringing acts, the Plaintiff has suffered and will continue to suffer injury and damages, and unless such acts and practices are enjoined by the Court, will continue to be injured in its business and property rights, and will

suffer and continue to suffer injury and damages, which are causing irreparable harm and for which Plaintiff is entitled to relief.

48.     Upon information and belief, the aforementioned infringement is knowing, intentional and willful.

## COUNT THREE

### Infringement of ALTIUM® Software Registration Number TX 8-415-454 ("ALTIUM® 454") by ZDM, 17 U.S.C. §§ 106 and 501

49.     The Plaintiff incorporates the previous paragraphs of this Complaint by reference and re-alleges them as originally and fully set forth herein.

50.     ZDM has knowingly and intentionally infringed, and continues to infringe ALTIUM® 454, and will continue to do so unless enjoined by this Court.

51.     As a direct and proximate consequence of ZDM's infringing acts, the Plaintiff has suffered and will continue to suffer injury and damages, and unless such acts and practices are enjoined by the Court, will continue to be injured in its business and property rights, and will suffer and continue to suffer injury and damages, which are causing irreparable harm and for which Plaintiff is entitled to relief.

52.     Upon information and belief, the aforementioned infringement is knowing, intentional and willful.

## COUNT FOUR

### Infringement of ALTIUM® Software Registration Number TX 8-415-448 ("ALTIUM® 448") by Mr. Willig, 17 U.S.C. §§ 106 and 501

53.     The Plaintiff incorporates the previous paragraphs of this Complaint by reference and re-alleges them as originally and fully set forth herein.

54.    Mr. Willig has knowingly and intentionally infringed, and continues to infringe ALTIUM® 448, and will continue to do so unless enjoined by this Court.

55.    As a direct and proximate consequence of Mr. Willig's infringing acts, the Plaintiff has suffered and will continue to suffer injury and damages, and unless such acts and practices are enjoined by the Court, will continue to be injured in its business and property rights, and will suffer and continue to suffer injury and damages, which are causing irreparable harm and for which Plaintiff is entitled to relief.

56.    Upon information and belief, the aforementioned infringement is knowing, intentional and willful.

## COUNT FIVE

### Infringement of ALTIUM® Software Registration Number TX 8-415-449 ("ALTIUM® 449") by Mr. Willig, 17 U.S.C. §§ 106 and 501

57.    The Plaintiff incorporates the previous paragraphs of this Complaint by reference and re-alleges them as originally and fully set forth herein.

58.    Mr. Willig has knowingly and intentionally infringed, and continues to infringe ALTIUM® 449, and will continue to do so unless enjoined by this Court.

59.    As a direct and proximate consequence of Mr. Willig's infringing acts, the Plaintiff has suffered and will continue to suffer injury and damages, and unless such acts and practices are enjoined by the Court, will continue to be injured in its business and property rights, and will suffer and continue to suffer injury and damages, which are causing irreparable harm and for which Plaintiff is entitled to relief.

60.    Upon information and belief, the aforementioned infringement is knowing, intentional and willful.

13

## COUNT SIX

**Infringement of ALTIUM® Software Registration Number TX 8-415-454
("ALTIUM® 454") by Mr. Willig, 17 U.S.C. §§ 106 and 501**

61.     The Plaintiff incorporates the previous paragraphs of this Complaint by reference and re-alleges them as originally and fully set forth herein.

62.     Mr. Willig has knowingly and intentionally infringed, and continues to infringe ALTIUM® 454, and will continue to do so unless enjoined by this Court.

63.     As a direct and proximate consequence of Mr. Willig's infringing acts, the Plaintiff has suffered and will continue to suffer injury and damages, and unless such acts and practices are enjoined by the Court, will continue to be injured in its business and property rights, and will suffer and continue to suffer injury and damages, which are causing irreparable harm and for which Plaintiff is entitled to relief.

64.     Upon information and belief, the aforementioned infringement is knowing, intentional and willful.

## PRAYER

WHEREFORE, Plaintiff, Altium LLC, respectfully requests that this Court enter judgment in its favor and against Defendants, ZDM Technologies, Inc., and Scott Willig, and requests relief as follows:

A.     Judgment be entered in its favor and against Defendants on each count of the Complaint;

B.     Declaring that Defendants have infringed the ALTIUM® Designer modular suite of software;

C.     Declaring that the foregoing infringement was willful and knowing;

D.     Entry of a preliminary and thereafter permanent injunction prohibiting the Defendants, and their agents, servants and employees, and all persons acting in concert with, or for them from continuing to reproduce, distribute, display, disseminate, transmit, make available for download or otherwise use the ALTIUM® Software in any manner whatsoever appropriating or in violation of the Plaintiff's Copyrights;

E.     Award Plaintiff its actual damages and Defendants' additional profits in an amount to be determined at trial;

F.     Award Plaintiff prejudgment interest;

G.     Award Plaintiff its costs, attorney's fees and expenses arising from this suit; and

H.     Grant Plaintiff such other relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all counts of its Complaint so triable.

Dated: October 30, 2019                    By:  /s/Alissa A. Digman_____

Alissa A. Digman
MCINNES & MCLANE, LLP
350 W. Ontario St., Suite 5E
Chicago, IL 60654
(312) 877-5805
alissa@mcmcip.com

John T. McInnes (pro hac vice to be filed)
MCINNES & MCLANE, LLP
9 Exchange Street
Worcester, MA 01608
(774) 420-2360
john@mcmcip.com